**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KIMBERLY SMITH,
on behalf of minor child, K.S.,                                   Case No. 1:14-cv-746

                    Plaintiff,                                           Dlott, J.
                                                                        Bowman, M.J.
          v.


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


**REPORT AND RECOMMENDATION**

          Plaintiff Kimberly Smith filed this Social Security appeal in order to challenge the

Defendant's finding that her minor child (hereinafter "KS") is not disabled.   *See* 42

U.S.C. §405(g).   Proceeding through counsel, Plaintiff presents two claims of error for

this Court's review.   The Commissioner filed a response, to which Plaintiff filed no reply.

As explained below, the ALJ's finding of non-disability should be AFFIRMED, because it

is supported by substantial evidence in the administrative record.

          **I.  Background**

          In January 2011, Plaintiff filed an application for Supplemental Security Income

(SSI) on KS's behalf, alleging a disability due to attention deficit hyperactivity disorder

("ADHD"), behavior problems, asthma, and speech and language deficits since January

1, 1999.[1] After the application was denied initially and upon reconsideration, Plaintiff

requested a hearing *de novo* before an Administrative Law Judge ("ALJ").   An

---

[1]SSI benefits may not be awarded for any period prior to the month in which the claimant filed an application.  *See* 20 C.F.R. §§415.330, 416.335.  Thus, the relevant disability period is the month in which Plaintiff's mother filed her application through the date of the ALJ's decision.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1244 (6th Cir. 1993).

evidentiary hearing was first scheduled for September 13, 2012, but was immediately continued in order to obtain KS's school records. (Tr. 129-130). On December 19, 2012, a second hearing was convened at which the medical expert, Terry Schwartz, Ph.D., explained that he could not render an opinion without full review of the results of recently conducted testing. (See Tr. 100-126). On March 13, 2013, after that information became available, a final hearing was held. (Tr. 36-99). KS, who was 14 years of age and in the eighth grade, provided testimony at the latter two hearings, as did his mother and Dr. Schwartz. On May 6, 2013, ALJ Gilbert Sheard denied Plaintiff's SSI application in a written decision. (Tr. 15-28).

The ALJ agreed that KS has severe impairments of asthma and ADHD with learning disorders in reading and math. (Tr. 15). Considering those impairments, the ALJ found that KS functionally experiences a "marked" limitation in only one relevant area or "domain" of his life – interacting and relating with others. The ALJ determined that although KS has other limitations, those limitations are "less than marked." (Tr. 21-27). Because KS has only one area of "marked" limitation, the ALJ determined that KS was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI. (Tr. 27-28).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination.

On appeal to this Court, Plaintiff first argues that the ALJ erred by failing to find that KS had at least "marked," if not "extreme" limitations in a second domain – that of acquiring and using information. In addition, Plaintiff contends that the ALJ improperly weighed the opinion evidence when he determined that KS's limitations were "less than marked." Had the ALJ determined that KS suffers from either a "marked" or "extreme"

limitation in the second domain of acquiring and using information, KS would have been entitled to a presumption of disability.

## II.  Analysis

### A.  Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  An individual under the age of eighteen will be considered to be under a disability if the child has a medically determinable impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months.  *See* 42 U.S.C. §1382c(a)(3)(C)(i).  The implementing regulations define the standard of "marked and severe functional limitations" in terms of "listing-level severity."  *See* 20 C.F.R. §§416.902, 416.906, 416.924a, 416.926.

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.

. .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income by a person under the age of 18, the Social Security Agency is guided by a three-step sequential benefits analysis. In this case, the first two steps of that analysis are uncontested. At Step 1, the Commissioner asks if the claimant is performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe." KS has not engaged in substantial gainful activity, and has severe impairments of asthma and ADHD with learning disorders in reading and math. (Tr. 15).

At Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments. *See* 20 C.F.R. §416.924a. The ALJ concluded that none of KS's impairments, alone or in combination, met or medically equaled a Listed Impairment that would entitle KS to a presumption of disability. The ALJ specifically considered Listings 103.03 for asthma and 112.11 for ADHD. (Tr. 15). The focus of Plaintiff's appeal to this Court is whether KS's mental impairments "functionally equal" a Listed impairment.

To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). To prove functional equivalence to a Listing, Plaintiff must show that KS's impairments resulted in "marked" limitations in at least two of the six domains, or that his impairments were "extreme" in at least one of the domains. 20

4

C.F.R. §416.926a(d). As stated, the ALJ determined that Plaintiff's limitations were "marked" in just one area – the domain of interacting and relating with others. Both at the administrative level and before this Court, "Plaintiff has the ultimate burden of establishing the existence of a disability." *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### B. Plaintiff's Claims of Error

In this judicial appeal, Plaintiff disputes only the ALJ's finding of "less than marked" limitations in the domain of acquiring and using information. Plaintiff first contends that substantial evidence does not support the ALJ's finding that KS's limitations were "less than marked" in the referenced domain, and that the evidence instead proves that his limitations were at least "marked" if not "extreme." Second, Plaintiff contends that the ALJ committed legal error by improperly weighing the opinion evidence that related to his "less than marked" findings.

### 1. "Less Than Marked" Limitation in Acquiring and Using Information

"Marked limitation" exists when the child's impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities, regardless of whether the impairment limits only one activity in the domain, or several activities. The interactive and cumulative effects of a child's impairments must be considered; both relevant regulations and several social security rulings also require the Commissioner to consider the "whole child" in making findings regarding functional equivalence. 20 C.F.R. §415.926a(b) and (c); *see also generally* SSR 09-1p. Relevant to Plaintiff's challenge in this case, a "marked" limitation is defined as a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. §416.926a(e)(2).

The domain of acquiring and using information concerns a child's ability to acquire or learn information, and to use the information he has learned.    In   reviewing the referenced domain, the ALJ discussed all relevant standards to evaluate "how well a child is able to acquire or learn information, and how well a child uses the information he has learned."   (Tr. 21).   As the ALJ noted, the domain involves how well children perceive, think about, remember, and use information in all settings, including their daily activities at home, at school, and in the community. (Tr. 21, citing 20 C.F.R. §416. 926a(g) and SSR 09-3p).   The ALJ appropriately reviewed what an adolescent child should be able to demonstrate in the domain of acquiring and using information, since KS was an adolescent child both at the time when the application was filed on his behalf and at the date of the evidentiary hearing.  (Tr. 21-22).  The ALJ also reviewed Social Security regulation 20 C.F.R. §416.926a(g)(3) and SSR 09-3p, which provide examples of the types of limited functioning in the referenced domain that a child may have over a range of ages and developmental periods.  (Tr. 22).

In terms of evaluating whether a child has "marked" impairment, the regulations provide that a child without any impairment should be able to "demonstrate what he has learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments)" and should "be able to use what he has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation)."  (Tr. 21, citing 20 C.F.R. §416.925a(g)).  An "adolescent" child with no impairment should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas)," and  should "learn to apply these skills in practical ways that will help him enter the workplace after

finishing school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer)." (Tr. 21-22).

In contrast to those with no limitations, children with limitations do not understand "words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) [have] difficulty recalling important things learned in school yesterday; (iv) [do] not use language appropriate for age; (v) [are] not developing 'readiness skills' the same as peers (e.g. learning to count, reciting ABC's, scribbling); (vi) [have] difficulty comprehending written or oral directions; (vii) [struggle] with following simple instructions; (viii) [have] difficulty solving mathematics questions" or "(ix) [talk] only in short, simple sentences, and [have] difficulty explaining what [they] mean[]." (Tr. 22, citing 20 C.F.R. §416.925a(g)(2)(iv) and SSR 09-3p). However, the regulations "recognize that limitations of any of the activities in the examples do not necessarily mean that a child has a 'marked' or 'extreme' limitation." 20 C.F.R. § 416.926a

In finding that KS has some limitation in acquiring and using information but evaluating the degree of that limitation as "moderate" and therefore "less than marked," the ALJ provided the following analysis:

> Claimant has less than marked limitation in acquiring and using information. This is the opinion of the medical advisor at [the] hearing. Also, cognitive testing of record has returned full-scale IQ scores of 78 and 81, indicative of intellectual functioning in the borderline to low-average range (Exhibits 12E/59 and 12F/3). Notably, while he displayed particularized difficulties in working memory, he consistently obtained average to low-average scores across the remaining areas tested…. While such results confirm claimant's learning disabilities in reading and math and indicate that he experiences some corresponding difficulty in his ability to acquire and use information, his measured problems are of less than marked nature. His low grades and poor academic achievement are affected by his impairments, but also attributable in part to his low motivation.

> My conclusion draws ample support from the remainder of the record, which indicates claimant's proven ability to provide for himself in such age-appropriate self-care activities as dressing, grooming, and hygiene. Moreover, he demonstrates sufficient cognitive skills to participate in team sports like basketball, and cites video games as a favored pastime. These games require a player to learn and then apply mastered skills to successfully advance onward. Claimant's talent in art, evidenced through sketches submitted during the recent hearing, further demonstrates his ability to acquire and apply learned skills when engaged.

(Tr. 22).

Plaintiff argues that none of the reasons cited by the ALJ are valid, and therefore do not constitute substantial evidence. Plaintiff generally complains that the ALJ failed to comply with the "whole child" approach that is mandated by SSR 09-1p. I disagree, and conclude that the ALJ's analysis is supported by substantial evidence.

Plaintiff first asserts that the ALJ "improperly inferred" that KS's limitations could not be markedly limited in acquiring and using information based upon his IQ scores. On the one hand, Plaintiff argues that IQ scores should not be considered *at all* because they measure "potential for learning," allegedly in contrast to achievement tests that reflect acquired knowledge. In the alternative, Plaintiff contends that to the extent that KS's IQ scores can be considered, the ALJ should have focused on KS's Verbal Comprehension index, Perceptual Reasoning Index, and full scale IQ scores because they bear the "strongest relationship to academics," rather than on KS's higher scores in working memory and processing speed (which fell within the "average" range).

I find no error. First, the above quotation shows that the ALJ did not "focus" on the higher scores but if anything gave greater weight to KS's full scale IQ scores, which fell within the borderline to low average range. (Tr. 22). Dr. Schwartz, the ME, also testified that he viewed KS as functioning within the low average range, opining that

KS's limitations in acquiring and using information were only "moderate" and were therefore "less than marked."  (Tr. 81, 83).

The ALJ's reasoning is well-supported by substantial evidence in the record, including, but not limited to, KS's IQ scores.  The undersigned cannot agree with either of Plaintiff's alternative hypotheses: that IQ scores cannot be considered at all in assessing the domain of acquiring and using information (a proposition that lacks any legal support), or that if the ALJ had placed more emphasis on the "right" scores, then he would have found a "marked" limitation.

Rather than focusing on selective scores, the ALJ clearly evaluated IQ scores in the context of the record as a whole, including achievement testing records from Gretchen Carroll, MA. (Tr. 20-21,1039-1042).  The ALJ recognized KS's educational records as additional evidence of moderate limitations, taking into consideration the fact that KS had never repeated a grade but was approximately one grade level behind his peers.  (Tr. 18, 62).  KS remained in "regular" classes, even though he did occasionally visit the resource room for small group instruction and worked with an intervention specialist for two hours per day.  Despite relatively poor grades overall, KS's grades were inconsistent throughout the school year.  For example, KS began his 8th grade year with an A in writing and Bs in math and social studies.

In Plaintiff's second line of attack, Plaintiff argues that the ALJ erred in finding that KS's "low grades and poor academic achievement are affected by his impairments, but also attributable in part to his low motivation."  (Tr. 22, emphasis added).  At the hearing and before this Court, counsel offers an alternative hypothesis, that KS tends to fall behind based upon his disability, and "just stops trying" when he reaches the point where he believes that any attempt to catch up would be futile.  Counsel points to KS's

mother's testimony that, based upon KS's speech and language problems, he is reluctant to ask for the help he needs, which causes him to fall further behind. Plaintiff concludes that the ALJ was wrong to attribute <u>any</u> portion of KS's academic problems on motivational factors or bad behavior.

In contrast to Plaintiff's hypothesis, ample evidence – an amount that easily surpasses the "substantial" standard - supports the ALJ's finding that KS's academic difficulties are due "in part" to motivational issues. Contrary to Plaintiff's argument, KS actually raised his grade in reading and other subjects over the course of the semester, particularly in the third quarter. (Tr. 19, 40-42, 1092). When asked why his writing class grade went from an A to an F, KS testified "I didn't like actually try my best to do my work," and when his grades declined, that it was because he was "not paying attention in class." (Tr. 121, 41). KS further explained that when the first quarter started, he was able to get an A because "oddly," he felt "ready to learn," but later on, he didn't want to pay attention to learn. (Tr. 121-122). KS's teachers reported that KS did well when he tried. (Tr. 19, 500). KS's mother also testified that in her opinion, KS did not put effort into his work. (Tr. 123).

The ALJ discussed the positive effect that medication had upon KS's academics. (Tr. 19). KS testified that when he took Adderall, which he began just before the school year began, he could pay attention when he wanted to. He testified that he has no difficulty paying attention to read an assignment or work on a test, and that he notices the benefits of medication almost to the end of the school day, but for the last 20 minutes. (Tr. 54). KS's mother also reported improved attention on the medication. (Tr. 19, 1022). KS testified he could pay attention when he felt like it to get his homework out of the way, so that "I can go and do what I want to do for the rest of the day." (Tr.

54-55).  KS's mother testified that KS had begun doing his homework independently without prompting and doing it "very well."  (Tr. 56).  Other records confirmed things were "going better" with "fewer issues with other kids."  (Tr. 19, 960).  At his October 2012 physical, KS had normal levels of distractibility and an overall level of attentional functioning described as "good."  (Tr. 19, 925).  KS reported no difficulty in focusing on television programs; he testified watches television "at least two or three hours" in one continuous block of time on a daily basis on weeknights before bed, and enjoys staying up until 4 a.m. to watch favorite shows on weekends.  (Tr. 67, 70).

In explaining why he believed KS had "less than marked" limitations, Dr. Schwartz remarked on KS's own testimony that he was able to draw elaborate art, play video games, and had no difficulties in paying attention when he wanted to.  (*See, e.g.*, Tr. 84, noting Plaintiff's testimony at Tr. 53-54 that he "can pay attention…without any problems.").  Offering an alternative interpretation of the same evidence, Plaintiff asserts that KS's artistic talent and focus in drawing should not have been used as evidence that his ADHD was not disabling, because the ALJ "failed to consider" that KS "uses drawing as an escape from the things which are disturbing him, and as a way to avoid having to interact socially."  (Doc. 9 at 11).  Plaintiff argues that drawing and academic subjects require different cognitive abilities.  Similarly, Plaintiff contends that the ALJ inappropriately referenced KS's ability to manage hygiene and grooming.

Contrary to Plaintiff's argument, the domain of acquiring and using information is not limited to "academic" information but includes "how well children perceive, think about, remember, and use information in all settings, including their daily activities at home, at school, and in the community."  Thus, it was not error for the ALJ to reason that Plaintiff's skill in drawing demonstrates the application of learned skills, as well as

extraordinary patience, attention to detail, and maturity.  (Tr. 23).  KS testified that he spends an hour to an hour and twenty minutes focusing on each detailed drawing, usually without interruption.  (Tr. 70-71).  The ALJ did not err by considering this evidence in the context of assessing KS's ability to concentrate and focus when he is motivated to do so.  Likewise, the ALJ did not err in considering KS's daily activities at home, including dressing, grooming and hygiene.  The "whole child" review not only permits but requires the ALJ to consider all relevant information under all relevant domains.  SSR 09-1p.

To the extent that non-academic information is appropriate to consider, Plaintiff alternatively claims that KS "actually needs very frequent reminders about staying in safe neighborhoods, coming home by curfew, and about taking his medications."  (Doc. 9 at 11-12).  KS's mother testified that he will only take his asthma medications regularly if she gives them to him, because he otherwise will claim to have used his inhaler when he has not done so, or will use it hastily and inaccurately without a spacer, because he is embarrassed to use it in front of people. (Tr. 118).  She testified that he walked home after curfew without his cell phone on one occasion and was late one other time.  (Tr. 114).  Again, the undersigned can discern no error in the ALJ's finding that this limited testimony supported only "moderate" rather than "marked" limitations in the domain of acquiring and using information in view of the record as a whole.[2]

Paralleling the argument concerning IQ scores, Plaintiff next argues that the ALJ focused on the wrong parts of Ms. Hansen's speech and language assessment.

---

[2]The Commissioner construes Plaintiff's argument as asserting that the ALJ should have found KS to have "marked" impairment in the domain of "caring for yourself."  While the undersigned interprets the argument differently, the ALJ's finding of "less than marked" or "moderate" limitation in the domain of self-care also is well supported by substantial evidence in the record.

Plaintiff complains that the ALJ relied upon relatively high scores of verbal fluency and word attack, as opposed to the most severe deficits found in expressive and receptive language. (Tr. 1014-1020).  Plaintiff emphasizes two scores on the Clinical Evaluation of Language Fundamentals test, including a "53 in Expressive Language and a 56 in Core Language," (Tr. 1018), both of which were more than three standard deviations below the mean.  Asserting that those two scores reflect areas that are "essential" for acquiring and using information, Plaintiff relies on the two scores to advocate for a finding of "extreme" impairment.  (Doc. 9 at 13).

However, this single piece of evidence is not sufficient to prove a "marked' or "extreme" impairment in any domain.  The two scores are insufficient to overturn the substantial body of evidence that supports the ALJ's finding that Plaintiff experiences "less than marked" limitation in the domain of acquiring and using information. Regulations confirm that test scores standing alone do not prove either "marked" or "extreme" impairment.  20 C.F.R. §416/026a(e)(4).

Among other reasons for rejecting Plaintiff's argument, Plaintiff has not shown that the CELF-4 test administered by Ms. Hansen qualifies as a valid test designed to measure ability in the domain of acquiring and using information.[3]  Even assuming the validity and relevance of the two scores, the same report included some mild and moderate deficits that were more consistent with the ALJ's "less than marked" finding. The regulations require not only scores, but the "equivalent of the functioning we would expect to find on standardized testing with scores" that are "at least two" standard deviations (for "marked") or "at least three standard deviations below the mean (for

---

[3]The maker of the CELF-4 test describes it as a test to "[q]uickly and accurately identify and diagnose language disorders." http://www.pearsonclinical.com/language/products/100000442/clinical-evaluation-of-language-fundamentals-fourth-edition-celf-4.html  (accessed on 11/19/2015).

"extreme"). *See* 20 C.F.R. §416.926a(e)(2)(explaining that test scores below the mean must be consistent with "day-to-day functioning in domain-related activities."). On the record presented, KS's "day-to-day functioning" in the "less than marked" area is supported by other substantial evidence. For example, KS began with an A in writing, and was able to raise his grade in reading from an F to a C over the course of the semester. (Tr. 19, 40, 1092). He has never been retained in any school grade, attends regular classes and does the same work (albeit with some interventional help, see Tr. 105), and there is no other evidence that would support that his day-to-day functioning is consistent with an "extreme" limitation in the domain of acquiring and using information.

Most importantly, the evaluation of whether substantial evidence exists does not involve deciding whether this Court would have reached a different decision based upon any singular piece of evidence. Rather, this Court's review is limited to a determination of whether "substantial" evidence exists in the record as a whole, defined as consisting of "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

Plaintiff offers two more challenges to the ALJ's analysis of the record as a whole, which the undersigned finds to be unpersuasive re-interpretations of evidence that the ALJ fairly considered. Plaintiff asserts that the examples cited as demonstrating KS's relative maturity as a 14-year-old boy were "single examples" that were not his "normal response to negative stimuli." (Doc. 9 at 10). At the hearing, Dr. Schwartz commented on KS's ability to react calmly and with noticeable restraint during an incident in which he was struck by a classmate. Rather than hitting back, KS quietly

walked out of class and took a seat to continue working in the hallway, and later reacted positively despite unfair criticism from a teacher about not being in class.  (Tr. 84).  Plaintiff points out that the teacher still suspended KS for his conduct.  However, the fact that KS was suspended does not lessen the fact that the incident showed KS's ability to demonstrate restraint in his reactions.

Finally, Plaintiff criticizes the ALJ's reference to KS's cognitive skills being sufficient to play a team sport and video games, because Plaintiff's mother testified that he was "not allowed to play basketball [on a school team] because he doesn't control his asthma." (Tr. 117).  The ALJ's reference reflects no error; KS himself testified that he plays pick-up basketball games with his friends at a local court, as did his mother.  (Tr. 74, 112-113).  KS's mother also testified that KS does not play video games as much as the ALJ found.  (Tr. 69, 72).  However, KS testified that he spends 40 minutes a day playing video games, even though he also testified that on "some days I don't play the game." (Tr. 69-70). The ALJ's observation that such games require a player to learn and apply mastered skills to advance reflects no reversible error.  (Tr. 22).  Since both video game playing and basketball relate to Plaintiff's ability to use and acquire information in the community and at home, it was not error for the ALJ to consider those activities in finding "less than marked" impairment in that domain.

### 2.  Evaluation of Opinion Evidence

In a closely related second assignment of error, Plaintiff argues that the ALJ erred by giving "significant" weight to Dr. Schwartz's opinion, and in the manner in which he assessed other opinion evidence including the findings of treating psychologist Dr.

Tracey Morrison, the opinions of speech and language pathologist Andrea Hansen,[4] and the December 2012 educational recommendations of Children's Hospital staff member Gretchen Carroll (who administered the Woodcock-Johnson testing and made educational recommendations based upon that testing).  (Tr. 20-21).

Plaintiff complains that Dr. Morrison and Andrea Hansen did not provide any opinions about disability, so their reports should not have been evaluated by the ALJ for that purpose.  Plaintiff's argument is misguided.  An ALJ can, and in fact must, consider the record as a whole when making disability determinations.  There is no support in the record for a conclusion that the ALJ misconstrued or misinterpreted either Dr. Morrison's report or Ms. Hansen's report.

Hansen's report included findings that KS has mild to severe linguistic deficits and that he should continue private speech therapy.  (Tr. 20, 914-920).  The ALJ found her conclusions to be consistent with the body of her report, and indicative of KS's "marked" difficulties in the domain of interacting and relating to others.  (Tr. 20).  Dr. Morrison, a licensed clinical psychologist, examined KS in December 2012 and interviewed his mother in October 2012.  Dr. Morrison opined that KS had moderate symptoms associated with his ADHD and learning disabilities in reading and mathematics, consistent with Dr. Morrison's assessment of KS's GAF score between 51 and 60.  (Tr. 987).  Both are considered acceptable medical sources, and substantial evidence supports the weight to which the ALJ gave to both of their opinions.

Somewhat contradictorily, Plaintiff argues that Dr. Schwartz's opinions (and by extension the ALJ's conclusions) were not "reliable" because of a failure to take into account  Ms. Hansen's speech and language pathology assessment.  At the hearing,

---

[4]Plaintiff and the ALJ both mistakenly refer to the date of this evaluation as November 2012; the record

Dr. Schwartz declined to respond to counsel's questions about how speech and language issues "fit into" KS's ADHD and learning problems diagnoses, because he was not a speech and language expert.  (Tr. 83-84).  Plaintiff contends that the ALJ should have rejected Dr. Schwartz's opinions in their entirety based upon his allegedly inadequate consideration of the Hansen report, but the undersigned disagrees.

In considering KS's speech and language deficits, Dr. Schwartz pointed out that he had not heard KS stutter a single time during the two and one half hour hearing despite record evidence that KS suffered from a stutter.  (Tr. 87-88).  He also testified that a speech impediment could lead to mild social difficulties.  (Tr. 88).  The ALJ also heard no stutter in KS's testimony.  (Tr. 92).  However, based upon the difficulty the ALJ had in understanding his "quiet voice" and "incomplete sentences" that the ALJ attributed to "sloppy thinking," the ALJ agreed that KS exhibited "marked" difficulties in the domain of interacting and relating with others.  (Tr. 92-94, *see also* Tr. 20, 24-25).  The record shows no error in that the ALJ fully considered the Hansen report, and diverged from Dr. Schwartz's opinion by finding Plaintiff's speech deficit more pronounced.

Plaintiff argues that under the "whole child" approach, the ALJ should have considered the same evidence and found the exact same level of "marked" impairment in the domain of acquiring and using information.  But just because a deficit leads to a finding of a "marked" impairment in one area does not mean that the ALJ was required to find the same level of impairment in a different domain.  The fact that the ALJ attributed greater limitations in the domain of interacting and relating with others does not mean that the ALJ failed to consider the same records in other domains.

---

reflects that the evaluation took place on October 24, 2012.  (Tr. 914).

Returning to the ALJ's consideration of other opinion evidence, Plaintiff contends that the ALJ misinterpreted and mischaracterized Ms. Carroll's report as supporting "the importance of enhancing such motivation-based tools as study, practice, and homework completion…."  (Tr. 21). Plaintiff contends that "[w]hat Ms. Carroll was actually saying is that K.S. needs help with staying organized and keeping track of what homework assignments he has….and that this is due to his weaknesses in attention and organization," and does not refer to his "motivation."  (Doc. 9 at 16).  Plaintiff asserts that if the ALJ "were to truly give 'significant weight' to the reports of Dr. Morrison, Ms. Carroll, and Ms. Hansen, then he would have been <u>forced</u> to find that K.S. does in fact have at least 'marked' limitations in the domain of 'acquiring and using information.'" (Doc. 9 at 16, emphasis added).  Once again, Plaintiff asks this Court to reweigh the evidence.  The ALJ did not err in describing Ms. Carroll's recommendations as relevant to and supportive of the ALJ's finding that KS's problems in acquiring and using information were "in part" due to poor motivation rather than disability.   The ALJ reviewed the entirety of the record, and substantial evidence supports his conclusions.

Last, Plaintiff argues that the ALJ erred in giving only "some" weight to the teacher assessment from Mr. Ed Kettler, KS's language arts teacher.  Mr. Kettler rated KS as having a number of "obvious" problems but no "serious" or "very serious" problems.  However, Plaintiff argues that Mr. Kettler's statement that KS has "daily" problems in "attending and completing tasks" (Tr. 472), combined with Mr. Kettler's rating that KS has "obvious" problems in six of ten areas in the domain of "acquiring and using information" even with the help of an intervention specialist for two hours per day, should have been interpreted as functionally equivalent to a "marked" impairment.   The ALJ pointed out that Mr. Kettler was not a specially trained mental health professional,

18

but acknowledged that he was an experienced educator with daily contact with KS. (Tr. 21). The ALJ's analysis reflects no factual or legal error, and his interpretation of Mr. Kettler's report was utterly reasonable, notwithstanding Plaintiff's own more favorable spin on the same report. Reweighing the evidence is not a permissible basis for remand. *Cutlip*, 25 F.3d at 286.

In sum, none of the evidence on which Plaintiff relies mandates a finding that KS had "marked" or "extreme" limitations in the referenced domain. Many children with "less than marked" limitations may perform poorly in school and/or require significant additional resources for a variety of reasons that do not equate to a "disability." Plaintiff demonstrates no reversible error. For the reasons discussed, substantial evidence exists to support the ALJ's determination that KS's impairment was "less than marked" in acquiring and using information.

In addition, the professional opinions of expert consultants and other evidence in the record constitutes substantial evidence to support the non-disability finding. It bears repeating that:

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d at 1035. That the evidence could be interpreted to support *either* a "marked" or a "less than marked" finding in a particular domain does not mean that it must be interpreted in Plaintiff's favor. The Commissioner's decision must be affirmed so long as "such relevant evidence [exists] as a reasonable mind might accept as adequate to support" it. *Cutlip,* 25 F.3d at 286.

19

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KIMBERLY SMITH,
on behalf of minor child, K.S.,                                          Case No. 1:14-cv-746

       Plaintiff,                                                    Dlott, J.
                                                                         Bowman, M.J.
    v.


COMMISSIONER OF SOCIAL SECURITY,

      Defendant.



## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).